1   WILDE & ASSOCIATES                          Electronically Filed on _____
2   Gregory L. Wilde. Esq.
    Nevada Bar No. 004417
3   208 South Jones Boulevard
    Las Vegas. Nevada 89107
4   Telephone:  702 258-8200
    bk@wildelaw.com
5   Fax:  702 258-8787

6   MARK S. BOSCO. ESQ.
7   Arizona Bar No. 010167
    TIFFANY & BOSCO, P.A.
8   2525 East Camelback Road. Suite 300
    Phoenix. Arizona 85016
9   Telephone: (602) 255-6000

10  Bank of America National Association as Successor by Merger to LaSalle Bank National Association.
    as Trustee for Morgan Stanley Mortgage Loan Trust 2006-13ARX
11  09-77182

12                          UNITED STATES BANKRUPTCY COURT

13                              DISTRICT OF NEVADA

14

15  In Re:                                      BK-S-09-28417-mkn

16  Linda S. Ginther and Robert Ginther         Date:  12/9/2009
17                                              Time:  1:30 pm

18              Debtors.                        Chapter 7
19

20              __MOTION FOR RELIEF FROM AUTOMATIC STAY__

21          Bank of America National Association as Successor by Merger to LaSalle Bank National

22  Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-13ARX. Secured Creditor

23  herein, ("Secured Creditor" or "Movant" hereinafter). alleges as follows:

24          1.      That on or about September 30. 2009. the above named Debtors filed this instant

25  Chapter 7 Petition in Bankruptcy with the Court.

26

2.      Secured Creditor is the current payee of a promissory note dated July 10, 2006 in the principal sum of $480,000.00 ("Promissory Note" herein), secured by a Real Property Trust Deed of same date ("Trust Deed" herein) upon property generally described as 2113 Ponticello Dr., Henderson, NV 89052, and legally described as follows:

PARCEL I:

LOT ONE HUNDRED AFTEEN (115) IN BlOCX EIGHT (B) OF THE ANAL MAP OF ANTHEM HEIGHTS-UNIT 3, ACOMMON INTEREST COMMUNITY AS SHOWN BY MAP THEREOF ON ALE IN BOOK 103 OF PlATS, PAGE 37 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL II :

A NON-EXCLUSIVE EASEMENT RIGHT AND EASEMENT OF USE AND ACCESS AS PROVIDED FOR IN AND SUWECT TO THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR COVENTRY HOMES AT ANTHEM RECORDED JUNE 26, 1998 IN BOOK 980626 AS DOCUMENT NO. 03098, AND BY THAT AMENDED AND RESTATED DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED FEBRUARY 7, 2000 IN BOOK 20000207 AS DOCUMENT NO. 00531, IN THE OFFICE OF THE COUNIY REOJRDER, CLARK COUNTY, NEVADA.

("subject property" herein).

Secured Creditor is informed and believes, and, based upon such information and belief, alleges that title to the subject property is currently vested in the name of Debtors.

3.      Movant is informed and believes and therefore alleges that the Debtors and the bankruptcy estate have no equity in the property. Pursuant to Debtors' Statement of Intentions the debtors intend on surrendering debtors' interest in the subject property. A true and correct copy of the Debtors' Statement of Intention is attached hereto as Exhibit "A".

4.      Movant is informed and believes and therefore alleges that the Debtors and bankruptcy estate have insufficient equity in the property.  The fair market value of the property pursuant to Debtors' Zillow.com is $468,500.00, less ten percent (10%) cost of marketing, less the first and second secured liens resulting in insufficient equity. Therefore, secured creditor is not adequately protected. A true and correct copy of the Debtors' Zillow.com is attached hereto as Exhibit "B".

5.    Secured Creditor has elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed: however Secured Creditor is precluded from proceeding to publish the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

6.    Secured Creditor has incurred to date attorney's fees of approximately $750.00..

7.    Secured Creditor urges that this Court issue and Order herein permitting this Secured Creditor to proceed to a Foreclosure Sale of the Property. including necessary action to obtain possession of the Property.

8.    Secured Creditor's Information Sheet as to the extent of liens and encumbrances against the subject property is attached hereto as Exhibit "C" and incorporated herein by reference. Secured Creditor will seek leave of Court to specify any further encumbrances against the subject property at the time of hearing.

9.    James F. Lisowski, Sr. has been appointed by this Court the Chapter 7 Trustee in this instant Bankruptcy proceeding.  By virtue of the position as Trustee of the estate of Debtors herein, Debtors hold title to the subject property in that capacity.  To the extent the relief sought herein is granted, Respondent. James F. Lisowski, Sr.. Trustee. is bound any such judgment.

10.    This Court has jurisdiction of this action pursuant to the provisions of 11 U.S.C. Section 362(d).

WHEREFORE. Secured Creditor prays judgment as follows:

(1)    For an order granting relief from the Automatic Stay. and permitting this Secured Creditor to move ahead with foreclosure proceedings under this Secured Creditor's Trust Deed and to sell the subject property at a Foreclosure Sale under the items of said Trust Deed including necessary action to obtain possession of the Property.

(2)    That a finding that Rule 4001(a)(3) of the Rules of Federal Bankruptcy Procedure is not applicable and Secured Creditor may immediately enforce and implement the order granting relief from the automatic stay.

(3)     In the alternative, an Order requiring the Debtors to reinstate and maintain all    .

obligations due under all of the trust deeds encumbering the subject property and further allowing

Secured Creditor with the remedies to proceed with foreclosure should the Debtor not maintain

payments.

(4)     For attorneys' fees and costs of suit incurred herein.

(5)     For such other and further relief as this Court deems appropriate.

DATED this 11th day of November, 2009.

**WILDE & ASSOCIATES**

By      /s/Gregory L. Wilde, Esq
        **GREGORY L. WILDE, ESQ.**
        Attorney for Secured Creditor
        208 South Jones Boulevard
        Las Vegas, Nevada 89107

20060717-0004116

Fee: $38.00
N/C Fee: $25.00

07/17/2006          14:24:08
T20060124522
Requestor:
    NATIONAL ALLIANCE TITLE

Frances Deane                    DOM
Clark County Recorder      Pgs: 26

Assessor's Parcel Number:
190-05-314-038
Return To: SILVER STATE FINANCIAL
SERVICES, DBA SILVER STATE MORTGAGE
2485 Village View Drive, 3rd Floor,
Henderson, NV 89074

Prepared By: Tami Strickler

Recording Requested By: SILVER STATE FINANCIAL
SERVICES, DBA SILVER STATE MORTGAGE
8655 SOUTH EASTERN AVENUE
LAS VEGAS, NV 89123

———————————— [Space Above This Line For Recording Data] ————————————

21004192-915 JF

# DEED OF TRUST

MIN 100163177001230512

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated July 10 , 2006
together with all Riders to this document.

**(B) "Borrower"** is Linda Ginther and Robert Ginther, wife and husband as
community property with right of survivorship

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is Silver State Financial Services, Inc d/b/a Silver State
Mortgage

Lender is a corporation
organized and existing under the laws of Nevada

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3029  1/01
WITH MERS
-6A(NV) (0307)
Page 1 of 15            Initials:
VMP Mortgage Solutions (800)521-7291

Lender's address is 2485 Village View Dr., 3rd Floor, Henderson, NV  89074

(D) "Trustee" is National Alliance Title 2300 Corporate Circle Drive #150, Henderson, NV  89074

(E) "MERS" is Mortgage Electronic Registration Systems. Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated July 10 , 2006
The Note states that Borrower owes Lender four hundred eighty thousand and 00/100
Dollars

(U.S. $480,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than August 1, 2036 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [X] Prepayment Rider | [X] Other(s) [specify] |
| | | INTEREST-ONLY ADDENDUM TO |
| | | ARM RIDER |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

Initials:

-6A(NV) (0307)                    Page 2 of 15                    Form 3029  1/01

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                              [Type of Recording Jurisdiction]
of CLARK                                      [Name of Recording Jurisdiction]:
SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID Number: 190-05-314-038                           which currently has the address of
2113 Ponticello Drive                                                                      [Street]
Henderson                                      [City], Nevada 89052          [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

-6A(NV) (0307)                     Page 3 of 15               Initials:_____          Form 3029  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
Linda Ginther                                           -Borrower

_____

_____ (Seal)
Robert Ginther                                          -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                    -Borrower

-6A(NV) (0307)                    Page 14 of 15                    Form 3029  1/01

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before me on $\text{July } 10, 2006$      by
Linda Ginther, Robert Ginther

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
JULY S. HAND
Appt. No. 96-1924-1
My Appt. Expires Feb. 27, 2008

Notary Public     July S. Hand

(Seal)

My commission expires:    2-27-08

-6A(NV) (0307)        Page 15 of 15       Initials:      Form 3029  1/01

EXHIBIT "A"

The land referred to in this Commitment is situated in the County of Clark, State of Nevada and is described as follows:

PARCEL I:

LOT ONE HUNDRED FIFTEEN (115) IN BLOCK EIGHT (8) OF THE FINAL MAP OF ANTHEM HEIGHTS-UNIT 3, A COMMON INTEREST COMMUNITY AS SHOWN BY MAP THEREOF ON FILE IN BOOK 103 OF PLATS, PAGE 37 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL II:

A NON-EXCLUSIVE EASEMENT RIGHT AND EASEMENT OF USE AND ACCESS AS PROVIDED FOR IN AND SUBJECT TO THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR COVENTRY HOMES AT ANTHEM RECORDED JUNE 26, 1998 IN BOOK 980626 AS DOCUMENT NO. 03098, AND BY THAT AMENDED AND RESTATED DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED FEBRUARY 7, 2000 IN BOOK 20000207 AS DOCUMENT NO. 00531, IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA.

MIN: 100163177001230512

Loan Number:

NATIONAL ALLIANCE TITLE COMPANY
hereby certifies this is a true and correct
copy of the original.

Authorized Signature

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

July 10, 2006                    Henderson                    NEVADA
[Date]                               [City]                          [State]

2113 Ponticello Drive , Henderson, NV 89052
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $480,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Silver State Financial Services, Inc d/b/a Silver State Mortgage

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.250 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on September 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on August 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 230220, Las Vegas, NV 89105

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $2,955.45 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -
Single Family - Fannie Mae UNIFORM INSTRUMENT

838N (0210)          Form 3520 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 4          Initials:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of August, 2011                , and on that day every 6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding three and one-quarter                                                    percentage points (                  3.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than                   12.250 % or less than             3.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two                         percentage point(s) (              2.000 %) from the rate of interest I have been paying for the preceding 6                   months. My interest rate will never be greater than             12.250 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of `fifteen` calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be `5.000` % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Form 3520 1/01

Initials:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Linda Ginther                   -Borrower

_____ (Seal)
Robert Ginther                  -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

*[Sign Original Only]*



# PREPAYMENT ADDENDUM TO NOTE

Loan Number: 7700123051

Date: July 10 , 2006

Borrower(s):   Linda Ginther, Robert Ginther

Property Address: 2113 Ponticello Drive
                    Henderson, NV 89052

       THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this    10th   day of   July ,
2006, and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the
"Note") made by the undersigned ("Borrower")  in favor of   Silver State Financial Services, Inc d/b/a Silver State
Mortgage

("Lender").   and dated the same date as this Addendum.  Repayment of the Note is secured by a Mortgage, Deed of
Trust, or Security Deed ("The "Security Instrument") given by Borrower in favor of Lender and dated the same date
as this Addendum.  To the extent that the provisions of this Addendum are inconsistent with the provisions of the
Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

       ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Note, Borrower
and Lender further covenant and agree as follows:

Section 5 of the Note is amended to read as follows:

5.                 **BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
                 I have the right to make payments of Principal at any time before they are
due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a
Prepayment if I have not made all the monthly payments due under the Note.
                The Note Holder will use my Prepayments to reduce the amount of Principal
that I owe under the Note.  However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to
reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no
changes in the due dates of my monthly payment unless the Note Holder agrees in writing to
those changes.
                If the Note contains provisions for a variable interest rate, my partial
Prepayment may reduce the amount of my monthly payments after the first Change Date
following my partial Prepayment.  However, any reduction due to my partial Prepayment
may be offset by an interest rate increase,  If this Note provides for a variable interest rate or
finance charge, and the interest rate or finance charge at any time exceeds the legal limit
under which a Prepayment penalty is allowed, then the Note Holder's right to assess a
Prepayment penalty will be determined under applicable law,

MULTISTATE PREPAYMENT ADDENDUM TO NOTE - SSM                                     FPAYADI.UFF
06/03
                                    Page 1 of 2

If within Thirty-six ( 36 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount.

Notwithstanding the foregoing provisions, I may make a full Prepayment without paying a Prepayment charge in connection with a bona fide arms-length sale of all or any part of, or any legal or beneficial interest in, the property after the first 0 months of the term of the Note. The phrase "bona fide and arms-length sale" means a sale in which all of parties involved in the transaction, including without limitation, the buyer, seller, lender, real estate agent or broker, are independent of one another and unrelated by familial or financial interests. I agree to provide the Note Holder with any and all evidence reasonably requested by the Note Holder to substantiate that the sale of the Property is bona fide and arms-length.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)
Linda Ginther                    -Borrower

_____ (Seal)
Robert Ginther                   -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

MIN: 100163177001230512                              Loan Number: 7700123051

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE PROMISSORY NOTE

Property Address: 2113 Porticello Drive , Henderson, NV 89052

THIS ADDENDUM is made this 10th  day of July 2006       , and is incorporated into and intended to form a part of the Adjustable Rate Note ("The Note") dated the same date as this Addendum executed by the undersigned and payable to Silver State Financial Services, Inc d/b/a Silver State Mortgage   (The Lender).

THIS ADDENDUM supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note.  None of the other provisions of the Note are Changed by this Addendum.

3.    PAYMENTS
      (A)  Time and Place of Payments
      I will pay interest by making payments every month for the first  120  payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues.  I will pay principal and interest by making payments every month thereafter for the next  240  payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.
      I will make my monthly payments on the first day of each month beginning on September 1, 2006  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal.  If, on August 1, 2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
      I will make my payments at   P.O. Box 230220, Las Vegas, NV 89105
, or at a different place if required by the Note Holder.

      (B)  Amount of My Initial Monthly Payments
      Each of my initial monthly payments will be in the amount of U.S. $ 2,500.00        . This payment amount is based on the original principal balance of the Note.  This payment amount may change.

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
      (C)  Calculations of Changes
      Before each Change Date, the Note Holder will calculate my new interest rate by adding three and one-quarter percentage point(s) (  3.250  ) to the Current Index for such Change Date.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Sibject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.
      During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance.  At the end of the Interest-Only Period and on such Change date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note.  The result of this calculation will be the new amount of my monthly payment.  After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**
   **(A) Late Charge for Overdue Payments**
   If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000  of my overdue payment of interest during the Interest-Only Period,  5.000  of my overdue payment of principal and interest thereafter.  I will pay this late charge promptly but only once on each late payment.

_____   7/10/06
Borrower                    Date
Linda Ginther

_____   7/10/06
Borrower                    Date
Robert Ginther


_____   _____
Borrower                    Date

_____   _____
Borrower                    Date


_____   _____
Borrower                    Date

_____   _____
Borrower                    Date

| PAYMENT HISTORY | |
|---|---|
| Last Payment Amount | $923.58 |
| Last Payment Date | 3/4/2009 |
| Fiscal Tax Year Payments | $3,694.30 |
| Prior Calendar Year Payments | $3,640.50 |
| Current Calendar Year Payments | $1,847.16 |

Printable Page

Click Here for Printable Page!

| New Search | Recorder | Treasurer | Assessor | Clark County Home |
|---|---|---|---|---|



B8 (Form 8) (12/08)

# United States Bankruptcy Court
### District of Nevada

In re    **Linda S Ginther**
      **Robert Ginther**                                                    Case No. _____
                                                  Debtor(s)          Chapter   **7** _____

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

**PART A** - Debts secured by property of the estate. (Part A must be fully completed for **EACH** debt which is secured by property of the estate. Attach additional pages if necessary.)

| Property No. 1 | |
|---|---|
| **Creditor's Name:**<br>**Americas Servicing Co** | **Describe Property Securing Debt:**<br>**Single Family Home**<br>**2113 Ponticello Dr.**<br>**Henderson, NV 89052** |

Property will be (check one):
   ■ Surrendered                ☐ Retained

If retaining the property, I intend to (check at least one):
   ☐ Redeem the property
   ☐ Reaffirm the debt
   ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
   ☐ Claimed as Exempt                     ■ Not claimed as exempt

EXHIBIT 

B8 (Form 8) (12/08)

| Property No. 2 | |
|---|---|
| **Creditor's Name:**<br>Central Mortgage Co | **Describe Property Securing Debt:**<br>**Single Family Home**<br>2113 Ponticello Dr.<br>Henderson, NV 89052 |

| Property will be (check one): | |
|---|---|
| ■ Surrendered | ☐ Retained |

If retaining the property, I intend to (check at least one):
   ☐ Redeem the property
   ☐ Reaffirm the debt
   ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

| Property is (check one): | |
|---|---|
| ☐ Claimed as Exempt | ■ Not claimed as exempt |

**PART B** - Personal property subject to unexpired leases. (All three columns of Part B must be completed for each unexpired lease. Attach additional pages if necessary.)

| Property No. 1 | | |
|---|---|---|
| **Lessor's Name:**<br>**-NONE-** | **Describe Leased Property:** | Lease will be Assumed pursuant to 11<br>U.S.C. § 365(p)(2):<br>☐ YES      ☐ NO |

I declare under penalty of perjury that the above indicates my intention as to any property of my estate securing a debt and/or personal property subject to an unexpired lease.

Date  **September 30, 2009**           Signature  **/s/ Linda S Ginther**
                                          **Linda S Ginther**
                                          Debtor

Date  **September 30, 2009**           Signature  **/s/ Robert Ginther**
                                            **Robert Ginther**
                                          Joint Debtor

## 2113 Ponticello Dr
Henderson NV 89052

4 beds, 3.0 baths, 2,743 sq ft
**Zestimate®: $468,500**

Find out more from an agent
**My Estimate:**

**Monthly Payment: $ 1,972 edit**
Ditech Refi Sale 800 210-9431

**Bird's Eye View**



See a

---

**Home Info**

**Owner Facts:**
- Single family
- 4 beds
- 3.0 bath
- 2,743 sqft
- Lot 12,632 sqft
- Built in 2004

**At-a-Glance Features:**
- Fireplace
- more

---

**Neighborhood: Coventry**

**Nearby Schools:**

**District:**
Clark
**Primary:**
Lamping
**Middle:**
Del Webb
**High:**
Coronado

See more Anthem local information
See more Anthem schools

---

**Charts & Data**

An agent from Prudential
Americana Group, REALTORS will
contact you about this home.

First Name*

Last Name*

EXHIBIT 

— $800k
≈ $719k
— $600k

Zillow.com    $403k

Jan05    Jan07    Jan09

See all charts & data

**ZESTIMATE®: $468,500**
Value Range: $374,800 -
$501,295
30-day change: $22,500
*Zestimate updated: 11/11/2009*

**Last sale and tax info**

**Sold 10/29/2003:**
    $353,200 ·
**2009 Property Tax:**
    $3,694

· Transaction not included in
Zestimate. More info
: 3 – Car-Dependent

Email Address·

Phone Number·
    (      )    -           ext.

I am·
    Please Choose One    ■

Message (optional)

**Or call (888) 321-0667**

**Street Map**

**2113 Ponticello Drive, Henderson, NV**
  Bird's eye view and larger map for 2113 Ponticello Dr

**Alternate Addresses**
2113, ponticello, dr, driv, drive, drv, anthem, henderson, nv, nev,
nevada, 89052

## ** SECTION 362 INFORMATION SHEET **

Linda Ginther and Robert Ginther
DEBTORNV362#

Chapter 7
Case No.: 09-28417-mkn

Bank of America National Association as Successor by Merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-13ARX
MOVANT
PROPERTY INVOLVED IN THIS MOTION: 2113 Ponticello Dr., Henderson NV 89052

NOTICE SERVED ON: Debtor(s) ___x___; Debtor (s) Counsel ____x____; Trustee ____x_____

DATE OF SERVICE: _____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st_Bank of America National Association as Successor by Merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-13ARX (PB $480,000.00) 2nd_Central Mortgage Co. (PB $101,398.00) Total Encumbrances: $581,398.00 APPRAISAL or OPINION as to VALUE: "Per attached valuation from www.zillow.com" $468,500.00 | 1st _____ 2nd _____ Total Encumbrances: $_____ APPRAISAL or OPINION as to VALUE: |

| TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR | OFFER OF "ADEQUATE PROTECTION" FOR MOVANT: |
|---|---|
| Amount of Note: $480,000.00 Interest Rate: 6.25 Duration: 30 Year Payment Per Month: $ 2,857.90 Date of Notice of Default: May 7, 2009 SPECIAL CIRCUMSTANCES: **I, Gregory L. Wilde, hereby certify that an attempt has been made to confer with debtor(s) counsel, or with debtor(s) and that more than two (2) business days have expired, and that after sincere effort to do so, counsel has been unable to resolve this matter without court action.** SUBMITTED BY: _____ SIGNATURE: _____ | SPECIAL CIRCUMSTANCES: SUBMITTED BY: _____ SIGNATURE: _____ |

EXHIBIT ___C___